UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DIANE LAQUIDARA<br>individually and on behalf<br>of similarly situated individuals,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>KIMBERLY BRUNELLE, and CHRISTOPHER<br>BRUNELLE, WEST MASS MANAGEMENT<br>GROUP, LLC d/b/a MAGIC LANTERN, and<br>MARK PESSOLANO, ORANGE LANTERN<br>INC.,<br><br>　　　　　　Defendants. | CLASS AND COLLECTIVE<br>ACTION COMPLAINT<br><br>C.A No. 3:21-30039 |

1.　　Plaintiff Diane Laquidara brings this class and collective action on behalf of herself and all other exotic dancers who have worked at the Magic Lantern strip club ("Magic Lantern") in Palmer, Massachusetts. Plaintiff brings this case under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq.* ("FLSA") and the Massachusetts Minimum Wage Law, G.L. c. 151 §§ 1 and 7, and the Massachusetts Tips Law, G.L. c. 149 § 152A. Plaintiff alleges that Defendants have failed to pay exotic dancers working at Magic Lantern strip club minimum wage, and have required dancers to pay fees and tip-outs, which are illegal under Massachusetts law and constitute unlawful kick-backs under the FLSA.

## PARTIES

2.　　Plaintiff Diane Laquidara ("Plaintiff") is a resident of Southbridge, Massachusetts. Laquidara worked as an exotic dancer at Magic Lantern from approximately July 2020 until December 2020.

1

3. Defendant Magic Lantern is an establishment where live nude dance entertainment is presented to adult members of the general public. Magic Lantern is located at 399 Wilbraham St, Palmer, MA 01069, United States.

4. Defendants Kimberly Brunelle and Christopher Brunelle are the current owner and operators of Defendant Magic Lantern. Upon information and belief, Kimberly Brunelle and Christopher Brunelle became owners and operators of Magic Lantern in 2020 through the corporation, West Mass Management Group, LLC, a Massachusetts Corporation with a principal place of business in Belchertown, Massachusetts. Kimberly Brunelle and Christopher Brunelle are directly involved in Magic Lantern's employment and payroll decisions. Upon information and belief, Kimberly and Christopher Brunelle reside in Belchertown, Massachusetts.

5. Defendant Mark Pessolano was the owner and operator of Defendant Magic Lantern prior to 2020, through Orange Lantern, Inc., a Massachusetts corporation with a principal place of business in Palmer, Massachusetts. Upon information and belief, prior to 2020, Mark Pessolano was directly involved in Magic Lantern's employment and payroll decisions. Upon information and belief, Mark Pessolano resides in Town of Wilbraham, Hampden County, Massachusetts.

**JURISDICTION AND VENUE**

6. The Court has subject matter jurisdiction under 29 U.S.C. § 201 et seq. (Fair Labor Standards Act) and 28 USC § 1331 (federal question).

7. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant 28 U.S.C. § 1367(a), because these claims are so related to the federal claims that they form part of the same case and controversy.

8. Venue is proper in the District of Massachusetts because the Defendants are

located in Palmer, Massachusetts in this judicial district, and because the events giving rise to the Complaint took place in Palmer, Massachusetts in this judicial district.

9. The Court has personal jurisdiction over Defendants Kimberly and Christopher Brunelle, who reside in Massachusetts, in this judicial district, and since their work as owner and manager of Magic Lantern has taken place in Palmer, Massachusetts, in this judicial district.

10. Defendants employ individuals engaged in commerce or in the production of goods for commerce and/or handling, selling, or otherwise working on goods or materials that have been moved in or produced in commerce by any person, as required by 29 U.S.C. §§ 206-7. Specifically, Plaintiff and other exotic dancers provide entertainment to out-of-state customers. Further, the services of Plaintiff and other exotic dancers are advertised online and on Instagram.

11. Defendants' annual gross volume of sales made or business done exceeds $500,000.

## CLASS DEFINITIONS

12. Plaintiff brings this action individually and as an opt-in, collective action pursuant to 29 U.S.C. § 216(b), on behalf of a class of all individuals who worked as exotic dancers at Magic Lantern at any time within the three years prior to joining this lawsuit, who were not paid minimum wage as required by the Fair Labor Standards Act ("FLSA"), and were subject to unlawful kick-backs under the FLSA.

13. Plaintiffs also bring this action individually and as a class action on behalf of a class of individuals who worked as exotic dancers at Magic Lantern at any time within the three years prior to the filing of this lawsuit, who were not paid minimum wage as required by Massachusetts law, and who were unlawfully required to share their tips with ineligible non-service employees.

## FACTUAL ALLEGATIONS

14. Plaintiffs and other exotic dancers who worked at Magic Lantern performed dances on stage and private dances for Defendants' customers.

15. There were between 7-10 exotic dancers working at Magic Lantern on any given night, with different dancers working on different days during the week, as well as significant turnover among the dancers.

16. Plaintiff and other exotic dancers were required to set their schedules a week in advance. In practice, Plaintiff often worked 3 shifts a week, with each shift lasting between 5-7 hours.

17. Plaintiff and other exotic dancers routinely communicated with the club's management about scheduling and other work matters, such as rule changes, over text.

18. Plaintiff and other exotic dancers were required to arrive at the club dressed and ready to perform.

19. Plaintiff and other exotic dancers did not receive any wages from Magic Lantern, despite being classified as employees and initially being promised that they would receive minimum wage for all hours worked. Instead, all their compensation came in the form of tips and fees paid by customers for dances. Magic Lantern set the prices that customers were required to pay for dances and determined the portion of the pay which Plaintiff and other dancers could keep. For example, a single song dance was $25, with the dancer receiving $15. A 30-minute private dance was $150, with the dancer receiving $100.

20. During Plaintiff's time working at Magic Lantern, the club's owners, operators, and managers introduced a program in which customers of the club paid to be "Members" of the club in order to receive discounts and freebies. As part of their membership, customers received

benefits such as two free lap dances per month. Plaintiff was told that the club would pay her for performing these dances for "Members", but she was never paid for performing these dances.

21. Plaintiff and other exotic dancers were required to go up on stage at regular intervals during their shift, according to lineups determined by the disc jockey ("DJ").

22. Magic Lantern required Plaintiffs and other dancers to adhere to rules relating to their work at the club, some of which were contained in an employment manual that dancers were required to sign. For example, dancers were not allowed to drink alcohol during their shift.

23. Plaintiffs and other exotic dancers were subject to discipline, including termination or suspension, if they failed to follow the rules and regulations set forth by Magic Lantern, its owners, operators and managers.

24. Defendants required Plaintiff and other exotic dancers to "tip out" each night to the DJ. At first, the minimum tip out amount per night was $20, but eventually this amount was increased to $40.

25. If Plaintiff and other dancers did not tip the DJ, the DJ would not include the dancer in the shift schedule at the club.

26. The work performed by Plaintiffs and other exotic dancers – namely, adult, exotic entertainment – was central to Magic Lantern's business as a nightclub providing adult live dancing entertainment.

27. As of early 2020, Defendants Christopher Brunelle and Kimberly Brunelle determined the payroll policies at the Magic Lantern; set the rules and requirements for dancers; and determined the general practices at the Magic Lantern, including those relating to pricing and promotions.

28. Prior to early 2020, Defendant Mark Pessolano determined the payroll policies at the Magic Lantern; set the rules and requirements for dancers; and determined the general practices at the Magic Lantern, including those relating to pricing and promotions.

**COLLECTIVE ACTION ALLEGATIONS UNDER THE FLSA**

29. Plaintiff brings Counts I-II of this lawsuit pursuant to 29 U.S.C. § 216(b) as a collective action on behalf of the FLSA Collective defined above.

30. Plaintiff desires to pursue her FLSA claims on behalf of all individuals who opt-in to this action pursuant to 29 U.S.C. § 216(b).

31. Plaintiff and the FLSA Collective Members are "similarly situated" as that term is used in 29 U.S.C. § 216(b) because, *inter alia*, all such individuals have been subject to Defendants' common business and compensation practices as described herein, and, as a result of such practices, have not been paid the legally mandated minimum wage compensation for all hours worked, and were required to pay unlawful kickbacks to Defendants. Resolution of this action

requires inquiry into common facts, including, *inter alia*, Defendants' common compensation and payroll practices.

32. The FLSA requires non-exempt hourly employees to be paid minimum wage for all hours worked.

33. Defendants failed to provide Plaintiff and other exotic dancers with minimum wage compensation as required by the FLSA, and required them to pay unlawful kickbacks in violation of the FLSA.

34. The similarly situated employees are known to Defendants, are readily identifiable, and can easily be located through Defendants' business records.

35. During the relevant time period, Defendants have employed dozens of FLSA Collective Members. These similarly situated employees may be readily notified of this action through U.S. Mail and/or other means, and allowed to opt in to this action pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their claims for minimum wage compensation, unlawful kickbacks, liquidated damages (or, alternatively, interest) and attorneys' fees and costs under the FLSA.

## MASSACHUSETTS CLASS ACTION ALLEGATIONS

36. Plaintiff brings Counts III and IV of this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of herself and the Massachusetts Class defined above.

37. The members of the Massachusetts Class are so numerous that joinder of all members is impracticable. Upon information and belief, there are more than forty (40) members of the Massachusetts Class.

38. Plaintiff will fairly and adequately represent and protect the interests of the Massachusetts Class because there is no conflict between the claims of Plaintiff and those of the

Massachusetts Class, and Plaintiff's claims are typical of the claims of the Massachusetts Class. Plaintiff's Counsel are competent and experienced in litigating class actions and other complex litigation matters, including wage and hour cases like this one.

39.     There are questions of law and fact common to the proposed Massachusetts Class, which predominate over any questions affecting only individual Class Members, including, without limitation, whether Defendants have violated and continue to violate Massachusetts law through their policy or practice of failing to pay exotic dancers minimum wages, and whether Defendants required or permitted exotic dancer to "tip out" ineligible, non-service employees.

40.     Plaintiff's claims are typical of the claims of the Massachusetts Class Members in the following ways, without limitation: (a) Plaintiff is a member of the Massachusetts Class; (b) Plaintiff's claims arise out of the same policies, practices and course of conduct that form the basis of the claims of the Massachusetts Class; (c) Plaintiff's claims are based on the same legal and remedial theories as those of the Massachusetts Class and involve similar factual circumstances; (d) there are no conflicts between the interests of Plaintiff and the Massachusetts Class Members; and (e) the injuries suffered by Plaintiff are similar to the injuries suffered by the Massachusetts Class Members.

41.     Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Massachusetts Class predominate over any questions affecting only individual Class Members.

42.     Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions

would entail. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy. The Massachusetts Class Members are readily identifiable from Defendants' own records. Prosecution of separate actions by individual members of the Massachusetts Class would create the risk of inconsistent or varying adjudications with respect to individual Massachusetts Class Members that would establish incompatible standards of conduct for Defendants.

43. A class action is superior to other available methods for adjudication of this controversy because joinder of all members is impractical. Further, the amounts at stake for many of the Massachusetts Class Members, while substantial, are not great enough to enable them to maintain separate suits against Defendants.

44. Without a class action, Defendants will retain the benefit of their wrongdoing, which will result in further damages to Plaintiff and the Massachusetts Class. Plaintiff envisions no difficulty in the management of this action as a class action.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

45. Pursuant to the Massachusetts state law requirements set forth in M.G.L. c. 149, § 150, Plaintiff filed a wage claim with the Office of the Attorney General on March 26, 2021.

## CLAIM FOR RELIEF

### Count I:  Minimum Wage under the FLSA

### (On behalf of Plaintiff and the FLSA Collective)

46. Plaintiff incorporates by reference the previous paragraphs of the Complaint.

47. Pursuant to 29 USC § 206, an employer must pay employees at least the minimum wage for all hours worked.

48.     The Defendants failed to pay Plaintiff and collective action members the minimum wage as required by 29 U.S.C. § 206.

49.     Defendants' failure to pay Plaintiff and collective action members minimum wage was knowing, willful, and intentional.

### Count II:  Unlawful Kickbacks under the FLSA
### (On behalf of Plaintiff and the FLSA Collective)

50.     Plaintiff incorporates by reference the previous paragraphs of the Complaint.

51.     The mandatory tip-outs that Defendants required from Plaintiff and the members of the collective constitute unlawful "kick-backs" to an employer under the FLSA, 29 U.S.C. § 203(m).

52.     29 U.S.C. § 203(m)(2) provides that "[a]n employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit."

53.     The unlawful kickbacks received or required by Defendants were obtained knowingly, willfully, intentionally, or in bad faith.

54.     Plaintiff and the members of the collective are entitled to an award of back pay for all unlawful kickbacks required by Defendants.

### Count III:  Violation of Massachusetts Wage Law
### (On behalf of Plaintiff and the Massachusetts Class)

55.     Plaintiff incorporates by reference the previous paragraphs of the Complaint.

56.     Massachusetts Minimum Wage Law, G.L. c. 151 §§ 1 and 7 requires employers to pay minimum wage compensation for employees for all hours worked.

57.     During all relevant times, Plaintiff and other exotic dancers were employees of

Magic Lantern within the meaning of Massachusetts Wage Law, G.L. c. 149 § 148 and G.L. c. 151 §§ 1 and 7.

58. During all relevant times, Defendants were employers within the meaning of Massachusetts Wage Law, G.L. c. 149 § 148 and G.L. c. 151 §§ 1 and 7.

59. Plaintiffs and other exotic dancers are entitled to recover their unpaid minimum wages as well as attorneys' fees and costs pursuant to Massachusetts Wage Law, G.L. c. 149 § 148 and Massachusetts Minimum Wage Law, G.L. c. 151 §§ 1 and 7.

60. This claim is brought pursuant to G.L. c. 151 § 20.

### Count IV:  Violation of Massachusetts Tips Law
### (On behalf of Plaintiffs and the Massachusetts Class)

61. Plaintiffs incorporate by reference the previous paragraphs of the Complaint.

62. Massachusetts Tips Law, G.L. c. 149 § 152A does not allow employers to permit or require tipped employees to "tip out" ineligible, non-service employees.

63. The Defendants violated G.L. c. 149 § 152A by requiring or permitting exotic dancers such as Plaintiff to pay over a portion of tips to and "tip out" DJs at Magic Lantern.

64. This claim is brought pursuant to G.L. c. 149, § 150.

**WHEREFORE**, Plaintiff requests that the Court enter the following relief:

a. An order permitting this litigation to proceed as a collective action pursuant to 29 U.S.C. § 216(b);

b. Prompt notice, pursuant to 29 U.S.C. § 216(b), of this litigation to all potential members of the FLSA Collective;

c. An order permitting this litigation to proceed as a class action pursuant to Fed. R. Civ. P. 23 on behalf of the Massachusetts Class;

d. An order appointing Plaintiff's attorneys as Class Counsel;

e. An award of monetary damages to Plaintiff and Class and Collective Action Members in the form of back pay for unpaid minimum wages, reimbursement of all unlawful withholdings from Plaintiffs' and the Class and Collective Action Members' wages, together with liquidated damages;

f. Attorneys' fees and costs; and

g. Such further relief as the Court deems just and proper.

Respectfully submitted,


By: */s/ Harold Lichten*
Harold L. Lichten
Olena Savytska
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
hlichten@llrlaw.com
osavytska@llrlaw.com


*Attorneys for Plaintiff
and the Proposed Class and Collective*


Dated:        April 2, 2021

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of April, 2021 a copy of the foregoing document was filed electronically through the Court's CM/ECF system, which will send notice of this filing to all counsel of record.

 */s/ Harold Lichten*
Harold L. Lichten