**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| DIANE LAQUIDARA<br>individually and on behalf<br>of similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>KIMBERLY BRUNELLE, and CHRISTOPHER<br>BRUNELLE, WEST MASS MANAGEMENT<br>GROUP, LLC d/b/a MAGIC LANTERN, and<br>MARK PESSOLANO, ORANGE LANTERN<br>INC.,<br><br>Defendants. | C.A No. 3:21-30039 |

**PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

## I. INTRODUCTION

Plaintiff Diane Laquidara, through counsel, respectfully submits this Motion for Final Approval of Class Action Settlement.[1] Plaintiff brought this case in April 2021 as a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and a class action under Rule 23 of the Federal Rules of Civil Procedure on behalf of individuals who worked as exotic dancers at a bar and restaurant called the Magic Lantern. Dkt. 1. Plaintiff alleged that Defendants violated the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA") and Massachusetts state law by failing to pay wages to Plaintiff and similarly situated individuals who

---

[1] Plaintiff has submitted a separate Motion with her request for attorneys' fees and costs.

1

worked as exotic dancers at Magic Lantern, and by requiring the dancers to pay fees and tip-outs to Magic Lantern. Id.

After the case was filed, Plaintiff filed a motion for conditional certification of her FLSA claims, and the Court conditionally certified a collective of all individuals who worked as exotic dancers at Magic Lantern between September 30, 2018 and September 30, 2021. See Dkt. 32. The Counsel for Plaintiff and West Mass Management Group LLC, Kimberly Brunelle and Christopher Brunelle (hereinafter referred to as the "West Mass Defendants") subsequently engaged in extensive settlement discussions to arrive at a framework for a classwide settlement. The West Mass Defendants had limited records for the class and collective members, and Plaintiff's Counsel used the sign in-sheets available, which covered the time period of July to October 2020, to prepare a damages estimate. Savytska Decl. (attached hereto as Exhibit 1) ¶ 8. After months of discussions, Plaintiff and the West Mass Defendants (the "Parties") reached an agreement to resolve Plaintiff's claims against them, covering the time period during which they operated the business – i.e. mid-March 2020 to early March 2022. See Settlement Agreement, Dkt. 50.2, ¶ 3.5. The Parties agreed to a proposed settlement of $60,000.00, which will provide substantial compensation to the class. See Dkt. 50.2 ¶¶ 2.7, 3.24.

The Parties entered into a written settlement agreement in August 2022, and Plaintiffs submitted a Motion for Preliminary Approval for the court's review on August 22, 2022 (Dkt. 50). On October 3, 2022, the Court granted Plaintiffs' motion and authorized distribution and publication of the Notice and Election to Participate/opt out forms. Dkt 53. To date, in addition to the Named Plaintiff, eight Class Members have filed claims in this case. Savytska Decl. ¶ 12. Among these, the Participating Class Member with the largest share will receive $9,602.43; the

average settlement award will be $4,166.67. Id. ¶ 12. Because no Class Members have submitted requests for exclusion, no funds will revert to Defendants. See Dkt. 50.2 ¶ 3.24.

As described below, this settlement is a fair resolution of Plaintiff's and Class Members' claims against the West Mass Defendants and Plaintiff requests that this Court approve the settlement pursuant to Fed. R. Civ. P. 23(e). As discussed in more detail below, despite considerable risks to recovery, after payment of fees and the General release Award, Plaintiff's Counsel will distribute, if approved by the Court, $37,500.00 to Participating Class Members pursuant to the formula described below. The proposed settlement is, therefore, fair and reasonable, and should receive final approval from the Court.

## II.   **PROCEDURAL HISTORY**

After this Court granted preliminary approval on October 3, 2022 (Dkt. 53), Plaintiff's Counsel issued notice by text message to 26 Class Members, using telephone numbers provided by the Named Plaintiff. Kirkpatrick Decl. (attached hereto as Exhibit 2) ¶ 2. Plaintiff's Counsel also placed notice by publication in the West Springfield Record, The Republican, and the Worcester Telegram and Gazette. Id. ¶ 3. Finally, Plaintiff's Counsel made follow-up calls to 28 Class Members between November 15, 2022 and December 13, 2022.  Kirkpatrick Decl. ¶ 4. Despite the challenges posed by the lack of contact information for Settlement Class Members, Plaintiff's Counsel's efforts resulted in 8 individuals, in addition to the Named Plaintiff, taking part in the Settlement. Savytska Decl. ¶ 12. Among these individuals, the Participating Class Member with the largest share will receive $9,602.43; the average settlement award will be $4,166.67. Id. Plaintiff's Counsel did not receive any objections or any requests to opt out of the settlement.  Kirkpatrick Decl. ¶6.

**III.     DISTRIBUTION OF THE SETTLEMENT FUNDS**

The total Settlement Amount is $60,000. Dkt. 50.2 ¶¶ 3.24. This Amount shall, subject to approval by the Court, be used to: (1) pay a general Release Award of $2,500.00 to Plaintiff Laquidara; (2) pay Settlement Awards to Participating Class Members form the Net Settlement Amount of $37,500.00; and (3) pay a Fee Award of $20,000.00, representing one-third of the Settlement Amount, to cover Plaintiff's attorneys' fees and costs in this matter.[2]

In accordance with the terms of the Settlement Agreement, the Net Settlement Amount will be distributed among the Settlement Class Members who submitted a timely and valid Election to Participate form ("Participating Class Members") as follows:

a. Plaintiff's Counsel have calculated the Settlement Share of each Participating Class Member by dividing the Net Settlement Amount by the total number of weeks worked by all Participating Class Members during the Class Period to arrive at a number representing a per-week settlement amount.

b. Plaintiff's Counsel then multiplied the per-week settlement amount by the number of weeks worked by each individual Participating Class Member during the Class Period to determine each Participating Class Member's Settlement Share.

Dkt. 50.2 ¶ 10.1. Within thirty (30) days after the Settlement becomes Final, West Mass Management Group, LLC, shall deliver to Plaintiff's Counsel an initial payment in the amount of Ten Thousand Dollars and No Cents ($10,000.00), and will continue to make payments of Ten

---

[2] Plaintiff's Counsel will be responsible for paying the substantial costs to administer and pay out the Settlement Fund. See Dkt. 50.2 ¶¶ 3.2, 3.24.

Thousand Dollars every 30 days until the Settlement is fully funded. Dkt. 50.2 ¶¶ 14.1-14.2. Upon receiving the first installment, Plaintiff's Counsel will issue a check representing the General Release Award to Plaintiff Laquidara. Dkt. 50.2 ¶ 14.4. Once the Settlement is fully funded, Plaintiff's Counsel will promptly distribute settlement checks to Participating Class Members. Dkt. 50.2 ¶ 14.5.

Because no Class Members have opted-out of the Settlement, no portion of the settlement funds will revert to the West Mass Defendants. Dkt. 50.2 ¶ 3.24. Settlement checks that are not cashed by the Participating Class Members will be paid to a *cy pres* beneficiary, Community Legal Aid, Inc.. Dkt. 50.2 ¶ 14.9.

### IV.   THE CLASS RECEIVED THE BEST NOTICE PRACTICABLE UNDER THE CIRCUMSTANCES OF THE PROPOSED SETTLEMENT.

#### A.   Dissemination of the Notice

As described above, Plaintiff's Counsel went to considerable effort to ensure that as many Class Members as possible received notice of the class action settlement. See Kirkpatrick Decl. Class Members were difficult to locate because the West Mass Defendants did not maintain records of the dancers who worked at Magic Lantern, and Plaintiff's Counsel had to rely on phone numbers provided by the Named Plaintiff. Plaintiff's Counsel sent notice by text message to 26 dancers; and followed up with approximately 28 phone calls in November and December of 2022. Kirkpatrick Decl. ¶ 4. Plaintiff's Counsel also placed notice by publication in West Springfield Record, The Republican, and the Worcester Telegram and Gazette. Id. ¶ 3. As a result of these efforts, and despite the lack of contact information for the Class Members, Plaintiff's Counsel received 8 Election to Participate forms. Id. ¶ 5. Because no Class Members have submitted

requests for exclusion, the entire Net Settlement amount will be distributed to Participating Class Members. See Dkt. 50.2 ¶ 3.24.

### B. Notice to the Class was Adequate

Constitutional due process and Federal Rule of Civil Procedure 23(c)(2)(B) require that absent Class Members receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Schulte v. Fifth Third Bank, 805 F. Supp. 2d 560, 595 (N.D. Ill. 2011). Notice should be "reasonably calculated to reach the absent class members." Reppert v. Marvin Lumber & Cedar Co., 359 F.3d 53, 56 (1st Cir. 2004). "Rule 23 does not require the parties to exhaust every conceivable method of identifying the individual class members." In re Prudential Ins. Co. of Am. Sales Practices Litig., 177 F.R.D. 216, 232 (D.N.J. 1997) (citing Weinberger v. Kendrick, 698 F.2d 61, 71 (2d Cir.1982) (rejecting the contention that the mailing of individual notice to the last known address of all class members was inadequate), cert. denied, 464 U.S. 818 (1983). Generally, all that is required is that the class be issued the "best notice practicable under the circumstances." In re Volkswagen & Audi Warranty Extension Litig., 273 F.R.D. 349, 355 (D. Mass. 2011). Indeed, it is well-settled that notice by first-class mail satisfies the notice requirement of Rule 23. See Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 173–77 (1974); Zimmer Paper Products, Inc. v. Berger & Montague, P.C., 758 F.2d 86, 90 (3d Cir. 1985); Parks v. Portnoff Law Associates, 243 F. Supp. 2d 244, 249-50 (E.D. Pa. 2003) (notices mailed to class members' last known address held reasonable and adequate). As several courts have held, "[n]otice need not be perfect, but need be only the best notice practicable under the circumstances, and each and every class member need not receive actual notice, so long as Plaintiffs' Counsel acted reasonably in choosing the means likely to inform potential class members." Serio v. Wachovia Sec., LLC, 2009 WL 900167, at *8

(D.N.J. Mar. 31, 2009) (quoting In re Merrill Lynch TYCO Research Sec. Litig., 249 F.R.D. 124, 133 (S.D.N.Y.2008)).

In this case, Plaintiff's Counsel worked diligently to deliver notice to the Class, given the information available to them. It is not necessary for every class member to receive actual notice, but only that the method of notice be "'reasonably calculated, under all the circumstances, to apprize interested parties of the pendency of the action and afford them an opportunity to present their objections.'" In re Integra Realty Res., Inc., 354 F.3d 1246, 1260 (10th Cir. 2004) (quoting Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950)).[3] Courts have found that notice by publication and by text satisfied the requirements of Rule 23. See, e.g., In re MetLife Demutualization Litig., 262 F.R.D. 205, 208 (E.D.N.Y. 2009) ("The best practicable notice under the circumstances is notice by publication in newspapers."); Dickensheets v. Arc Marine, LLC, 440 F.Supp.3d 670, 672 (S.D. Tex. Feb. 19, 2020) ("providing notice via text message in addition to other traditional notice methods will almost always be more appropriate in modern society."); see also Yates v. Checkers Drive-In Restaurants, Inc., 17 C 9219, 2020 WL 6447196, at *3 (N.D. Ill. Nov. 3, 2020) ("Given the reality of communications today, text message notification may be more effective at notifying potential class members than emailed notice alone.").

Plaintiff's Counsel did not have contact information for all of the class members. However, they published notice in the major area newspapers which were likely to be seen by class members,

---

[3] See also In re AT & T Mobility Wireless Data Servs. Sales Tax Litig., 789 F. Supp. 2d 935, 968 (N.D. Ill. 2011) ("Due process does not require that every class member receive notice."); Carlough v. Amchem. Prod., Inc., 158 F.R.D. 314, 325 (E.D. Pa. 1993) ("Receipt of actual notice by all class members is required by neither Rule 23 nor the Constitution."); In re Nat'l Life Ins. Co., 247 F.Supp.2d 486, 492 (D. Vt. 2002) ("An alleged failure to receive notice will not sustain a due process challenge as long as reasonable measures were taken to provide individualized notice to identifiable class members.").

made use of the phone numbers available to them to send notice by text and placed dozens of follow-up calls, resulting in a total of eight Election to Participate forms being submitted. Kirkpatrick Decl. ¶¶ 2-5. Given Plaintiff's Counsel's substantial efforts to ensure notice of the settlement was actually received by as many Class Members as possible, and in light of the absence of any opt-outs or objections, the dissemination of the notice here was more than adequate.

### V. THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE, AND THEREFORE, SHOULD BE APPROVED.

#### A. The Legal Standard for Final Settlement Approval.

It is well-established that "the law favors class action settlements." In re Lupron Mktg. & Sales Practices Litig., 228 F.R.D. 75, 88 (D. Mass. 2005) (citation omitted); see also In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 535 (3d Cir. 2004) ("an overriding public interest in settling class action litigation, and it should therefore be encouraged"). Pursuant to Fed. R. Civ. P. 23(e), "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." The decision of whether to approve a proposed settlement is left to the discretion of this Court. In re Pharm. Indus. Average Wholesale Price Litig., 588 F.3d 24, 32 (1st Cir. 2009).

"The case law offers 'laundry lists of factors' pertaining to reasonableness, but 'the ultimate decision by the judge involves balancing the advantages and disadvantages of the proposed settlement as against the consequences of going to trial or other possible but perhaps unattainable variations on the proffered settlement.'" Bezdek v. Vibram USA, Inc., 809 F.3d 78, 82 (1st Cir. 2015) (quoting Nat'l Ass'n of Chain Drug Stores v. New England Carpenters Health Benefits Fund, 582 F.3d 30, 44 (1st Cir.2009)). Generally, "[i]f the parties negotiated at arm's length and conducted sufficient discovery, the district court must presume the settlement is reasonable." Id. (quoting In re Pharm. Indus. Average Wholesale Price Litig., 588 F.3d 24, 32–33

(1st Cir.2009)). See also City P'ship Co. v. Atl. Acquisition Ltd. P'ship, 100 F.3d 1041, 1043 (1st Cir. 1996) ("when sufficient discovery has been provided and the parties have bargained at arms-length, there is a presumption in favor of the settlement"); Rowland v. Cellucci, 191 F.R.D. 3, 6 (D. Mass. 2000) ("strong initial presumption" of fairness arises where the parties can show that "the settlement was reached after arms'-length negotiations, that the proponents' counsel have experience in similar cases, that there has been sufficient discovery to enable counsel to act intelligently, and that the number of objectors or their relative interest is small").

In determining the fairness of a settlement, courts in the First Circuit have relied on factors such as:

> (1) [the] risk, complexity, expense and duration of the case; (2) comparison of the proposed settlement with the likely result of continued litigation; (3) reaction of the class to the settlement; (4) stage of the litigation and the amount of discovery completed; and (5) quality of counsel and conduct during litigation and settlement negotiations.

In re Celexa & Lexapro Mktg. & Sales Practices Litig., 2014 WL 4446464, at *5 (D. Mass. Sept. 8, 2014) (quoting In re Tyco Int'l, Ltd. Multidistrict Litig., 535 F.Supp.2d 259, 259–60 (D.N.H.2007)). As set out below, these factors favor granting final approval in this case.

**B.     The Proposed Settlement Satisfies the Requirements for Final Approval.**

1.      As demonstrated herein, the settlement satisfies the criteria for final approval. Although Plaintiff believes she and the Class Members have strong and meritorious claims, several concerns have led Plaintiff's Counsel to conclude that a settlement with the West Mass Defendants is preferable to a judgment on the merits. Continued litigation of this case would entail significant risks and expense. For instance, the Defendants have argued that Class Members received all wages they were entitled to out of payments made by patrons for dances, and that Class Members were not required to tip out staff at the Magic Lantern. Savytska Decl. ¶ 18. In addition, if this case were to move forward, significant discovery would need to be taken

concerning, *inter alia*: (i) liability; (ii) damages; and (iii) the appropriateness of class certification. The Parties would need to engage in electronic discovery and depositions of the Plaintiff, other putative Class Members, Defendants' employees, and corporate representatives. After completing discovery, the Parties would likely move for summary judgment concerning the legality of Defendants' compensation scheme. If the Court determined that factual disputes precluded summary judgment, a fact-intensive trial would be necessary, and appeals may follow. Id. ¶ 19.

Based on these considerations, Plaintiff's Counsel strongly believe that the settlement negotiated here is fair, reasonable, adequate and most importantly, is in the best interest of the Class. In reaching this conclusion, Plaintiff's Counsel have spent many hours investigating Defendants' potential liability, reviewing the available records, and putting together a damages analysis, and have spent many months negotiating with the West Mass Defendants' Counsel. Savytska Decl. ¶¶ 6-8. Moreover, the amount of the Net Settlement Fund ($37,750.00) is sufficient to pay the Participating Settlement Class members their full single damages alleged in this action, were the West Mass Defendants found to be liable. Id. ¶ 12. This settlement allows Settlement Class Members to obtain compensation immediately, rather than in years. Furthermore, a review of the factors considered by courts in the First Circuit shows that this settlement is overwhelmingly fair and reasonable and clearly warrants final approval.

### 1. The Settlement Negotiations Occurred at Arm's Length.

The procedural background of this matter supports a finding that the Settlement Agreement was negotiated at arm's length by experienced counsel concerning *bona fide* disputes between their clients with respect to liability and damages to Settlement Class Members. The case presented numerous and vigorously contested issues related to the wages owed to the Settlement Class Members and whether certain legal defenses provided the West Mass Defendants with a complete

or partial defense to liability. The Parties engaged in extensive negotiations over the terms of a proposed settlement over the course of several months. Plaintiff's Counsel used the data available to prepare the damages model underlying a potential class wide settlement. Plaintiff's counsel also successfully briefed a Motion for Conditional Certification, which became the catalyst for settlement discussions, and prepared a detailed Motion for Preliminary Approval.

The time and effort expended by the Parties in the course of this litigation, and the circumstances of their negotiations, are persuasive indicators that there was no collusion in either the negotiation process nor in the settlement achieved. Furthermore, the proposed Settlement Agreement between Plaintiff and the West Mass Defendants demonstrates that the settlement was negotiated at arm's length by experienced counsel concerning *bona fide* disputes between their clients with respect to liability and damages. See Dkt. 50.2. Such arm's length negotiations between capable and experienced counsel are entitled to a presumption of fairness, reasonableness, and adequacy. Rolland v. Cellucci, 191 F.R.D. 3, 6 (D. Mass 2000).

### 2. Comparison of the Proposed Settlement with the Likely Result of Continued Litigation Favors Final Approval

"In evaluating the substantive fairness of a class action settlement, the court cannot, and should not, use as a benchmark the highest award that could be made to the plaintiff after full and successful litigation of the claim. Nor should the court consider cases of particular individual class members to determine whether each and every member of the class receives the fullest possible compensation." Duhaime v. John Hancock Mut. Life Ins. Co., 177 F.R.D. 54, 68 (D. Mass. 1997). See also In re Celexa & Lexapro Mktg. & Sales Practices Litig., 2014 WL 4446464, at *7 ("A settlement need not reimburse 100% of the estimated damages to class members in order to be fair."); O'Brien v. Brain Research Labs, LLC, 2012 WL 3242365, at *15 (D.N.J. Aug. 9, 2012) ("When evaluating the fairness of settlements, courts have held that full compensation is not a

prerequisite for a fair settlement."). Here, a settlement of $60,000.00 constitutes an excellent recovery for Plaintiff and the Settlement Class Members, especially in light of the risks in this case as explained below. Id. ¶¶10-11, 18-19. Even where the plaintiffs' claims are relatively strong, a settlement's fairness increases when the recovery of the class members will be substantial. "It must also be remembered that 'a dollar today is worth a great deal more than a dollar ten years from now.'" Schulte, 805 F. Supp. 2d at 583 (quoting Reynolds v. Beneficial Nat. Bank, 288 F.3d 277, 284 (7th Cir. 2002)). Moreover, the Participating Class Members in this case will receive their full alleged damages, with the average settlement share in excess of $4,000.00. Savytska Decl. ¶ 12. The fact that Participating Class Members are receiving such substantial benefits weighs heavily in favor of granting settlement approval.

### 3. There Has Been No Opposition to the Settlement.

The "reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." In re Am. Bank Note Holographics, Inc., 127 F. Supp. 2d 418, 425 (S.D.N.Y. 2001) (citing Sala v. National R.R. Passenger Corp., 721 F.Supp. 80, 83 (E.D.Pa.1989)). "In fact, the lack of objections may well evidence the fairness of the Settlement." Id. (citing In re PaineWebber Ltd. Partnerships Litig., 171 F.R.D. 126 (S.D.N.Y.); Schwartz v. Novo Indus. A/S, 119 F.R.D. 359, 363 (S.D.N.Y.1988)). In this case, Plaintiff's Counsel have received no objections from the class and no opt-outs. Thus, this factor strongly favors final approval. See In re Mexico Money Transfer Litig., 164 F.Supp.2d 1002, 1021 (N.D. Ill. 2000) (holding that the fact that more than "99.9% of class members have neither opted out nor filed objections . . . is strong circumstantial evidence in favor of the settlement").

### 4. The Stage of Litigation and Completion of Discovery Strongly Favor Final Approval.

This factor is relevant because it determines "how fully the district court and counsel are able to evaluate the merits of plaintiffs' claims." Armstrong v. Bd. of Sch. Dirs. of City of Milwaukee, 616 F.2d 305, 325 (7th Cir.1980). Discovery is sufficient if it allows a court to "intelligently make . . . an appraisal of the Settlement." In re Austrian & German Bank Holocaust Litig., 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000) (quotation marks omitted).

Here, the Parties have conducted extensive factual investigation, and Plaintiff's Counsel have used the sign-in sheets available to create a classwide damages analysis, modeling the hours worked by class members and the damages owed to each. This is "sufficient" to determine the fairness and adequacy of settlement at this stage. Furthermore, the stage of the proceedings supports settlement approval. Plaintiff's Counsel have already briefed conditional certification in this case. Dkts. 21, 31. This briefing has provided the impetus for settlement discussions among the parties and has helped Plaintiff secure a favorable settlement. In sum, Plaintiff's Counsel is well aware of the damages recoverable in this action, and the procedural background of this matter supports a finding that the Settlement Agreement was negotiated at arm's length by experienced counsel concerning *bona fide* disputes between their clients with respect to liability and damages to Settlement Class Members. Plaintiff's Counsel, and the Court, are thus able to fully evaluate the merits of the claims brought here.

### 5. The Proponents of the Settlement Are Highly Experienced in Similar Litigation.

Plaintiff and the Settlement Class Members are represented by highly experienced and competent counsel who have litigated numerous wage and hour cases aggressively and successfully. Lead counsel, Attorney Harold Lichten, has litigated, tried, and settled numerous class action wage-and-hour cases and is a recognized expert in labor and employment law in

Massachusetts.[4] Furthermore, Mr. Lichten's law firm, Lichten & Liss-Riordan, P.C., are pioneers in the wage and hour field and have litigated and settled numerous class action matters filed in the federal courts.[5] Those settlements contained very similar terms to the proposed settlement in this case, including the same provision for attorneys' fees and the same basic method for notifying class members and distributing the settlement proceeds.

Plaintiff's Counsel are thus well aware of the law in this area, and their experience has provided the plaintiff class with a high degree of expertise, which contributed to a favorable resolution of their claims. Mr. Lichten's firm is likewise experienced in the mechanics of class settlement administration. In the dozens of cases the firm has settled as class actions, there have been thousands of class members overall requiring active engagement in processing claims from these settlements and distributing settlement proceeds. Plaintiff's Counsel's opinion that the proposed settlement is fair and reasonable under the circumstances should, therefore, be accorded considerable weight.

### C. Community Legal Aid is a Proper Cy Pres Recipient.

---

[4] Among other things, Mr. Lichten successfully argued the landmark case on the Massachusetts Independent Contractor Law, Somers v. Converged Access, Inc., 454 Mass. 582 (2009).

[5] The class cases they have litigated and settled in federal court include: Brandon v. 3PD, Inc., C.A. No. 13-03745 (N.D. Ill. Jan. 16, 2016) (Doc.#151); Anderson v. HomeDeliveryAmerica.com, et al., C.A. No. 11-cv-10313 (D. Mass. Dec. 17, 2014) (Doc. #108); Mansingh v. Exel Direct, Inc., C.A. No. 12-11661 (D. Mass. May 7, 2014); Kiely v. TripAdvisor, LLC, C.A. No. 08-11284 (D. Mass. Aug. 8, 2011) (Doc. #52); Apana et al. v. Fairmont Hotels, Inc., C.A. No. 08-cv-00528 (D. Hawaii 2011); Carreiro, et al. v. Huntleigh Corp., et al., C.A. No. 08-10819 (D. Mass.); Elienberg v. RCN, C.A. No. 09-10912 (D. Mass.); Maliniski et al. v. Starwood Hotels, C.A. No. 08-11859 (D. Mass.); Monahan et al. v. WHM LLC d/b/a LXR Luxury Resorts and Boca Resorts, Inc. d/b/a Boca Raton Resort & Club, C.A. No. 09-CV-80198 (S.D. Fla.); Hayes et al. v. Aramark Sports Service LLC, C.A. No. 08-10700 (D. Mass.); Niles et al. v. Ruth's Chris Steak House, C.A. No. 08-07700 (S.D.N.Y.); Mitchell et al. v. PrimeFlight Aviation Services, C.A. No. 08-cv-10629 (D. Mass.); Barreda et al. v. Prospect Airport Svcs., C.A. No. 08-323 (N.D. Ill.); Miller et al. v. SBLI, C.A. No. 08-10267 (D. Mass.).

Since there will be no reversion of settlement funds to Defendants, 100 percent of the Net Settlement Fund, totaling $37,750.00, will be distributed to the Participating Class Members. While Participating Class Members will have ample time to cash their checks, if a Participating Class Member has failed to cash his check within 180 days, Plaintiff's Counsel will distribute the remaining funds to a *cy pres* recipient, which the parties have designated as Community Legal Aid. Dkt. 50.2, ¶ 14.9.

In Plaintiff's Counsel's experience, there is generally little, if any, money that goes to a *cy pres* recipient. Since the entire Net Settlement fund is distributed to Participating Class Members, there are no funds set aside for *cy pres*. It is rare that an individual who has gone through the trouble of filing a claim form will not cash their settlement check within 180 days. This will likely be true in this case since the settlement shares will be substantial, with the average share in excess of $4,000.00. Id. ¶ 12.

Furthermore, Community Legal Aid is an appropriate *cy pres* designee. Cy pres means "as near as possible" and the purpose of *cy pres* distribution is to "put[ ] the unclaimed fund to its next best compensation use, e.g., for the aggregate, indirect, prospective benefit of the class." Graff v. United Collection Bureau, Inc., 2016 WL 74092, at *10 (E.D.N.Y. Jan. 6, 2016) (citing 2 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 10:17 (4th ed.2002) (emphasis supplied)). Community Legal Aid provides "provides free civil legal services to low-income and elderly residents of Central and Western Massachusetts," which covers almost all of the class members.[6] A contribution to Community Legal Aid will further compliance with the Massachusetts wage

---

[6] https://communitylegalaid.com/what-we-do (last visited February 17, 2023).

laws and will likely result in directly benefitting some of the class members in this case. Thus, Community Legal Aid is a proper *cy pres* recipient.

### VI.   THE GENERAL RELEASE AWARD IS FAIR AND REASONABLE

The settlement provides for a General Release Award of $2,500.00 for Plaintiff Laquidara. Dkt. 50.2 ¶ ¶ 14.4. This proposed Award is fair and reasonable, and appropriately compensates Plaintiff for providing a broader release of claims against the West Mass Defendants in this case. See, e.g., Chase v. N. Fla. Bldg. Maint., LLC, 2020 WL 3848081, at *3 (M.D. Fla. June 17, 2020), report and recommendation adopted, 2020 WL 3833460 (M.D. Fla. July 8, 2020) (collecting cases) (approving settlement Plaintiff received additional consideration for agreeing to the conditions in the general release clause.)

### VII.   CONCLUSION

For the reasons set forth herein, Plaintiff respectfully requests that this Court grant final approval of this proposed settlement and enter the Proposed Order attached as Exhibit 3.

Dated:  February 27, 2023

Respectfully submitted,

DIANE LAQUIDARA,
 individually and on behalf of
others similarly situated,

/s/ Olena Savytska
Harold Lichten
Olena Savytska
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston St., Suite 2000
Boston, MA 02116
Telephone: (617) 994-5800

                                       hlichten@llrlaw.com
                                       osavytska@llrlaw.com

*Attorneys for Plaintiff*
*and the Proposed Class and Collective*

## CERTIFICATE OF SERVICE

      I hereby certify that on this 27 day of February, 2023, a copy of the foregoing document was filed electronically through the Court's CM/ECF system, which will send notice of this filing to all counsel of record.

                                       /s/ Olena Savytska

                                       Olena Savytska, Esq.